```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA

 4              v.                      17 CR 649 (GBD)

 5   TERRELL POLK,
     JAMEL MOSS,
 6   KEVIN CORBETT,
     TIMOTHY SMITH,
 7                                      Decision
                  Defendants.
 8   ------------------------------x

 9
                                       New York, N.Y.
10                                     July 12, 2018
                                       10:15 a.m.
11
     Before:
12
              HON. GEORGE B. DANIELS
13
                                       District Judge
14

15
              APPEARANCES
16

17   GEOFFREY S. BERMAN
          United States Attorney for the
18        Southern District of New York
     MICHAEL K. KROUSE
19        Assistant United States Attorney

20   RICHARD LIND
          Attorney for Defendant Polk
21
     JUDITH VARGAS
22        Attorney for Defendant Moss

23   CESAR DE CASTRO
          Attorney for Defendant Corbett
24
     STEVEN G. BRILL
25        Attorney for Defendant Smith
```

1           (Case called)

2           THE COURT:  Good morning.  I received all the

3    submissions with regard to the motion and hearing.  Does the

4    defense wish to be heard any further with regard to the motion?

5           MR. LIND:  Briefly, Judge.  Once again, I think that

6    the government's arguments and evidence really doesn't pass the

7    smell test here.  I'll give you an example, and I think counsel

8    for Mr. Smith went into this as well.

9           The government argues Officer Spina sees the car at

10   the gas station, he notices there is a missing license plate,

11   he notices there are tinted windows: two grounds, according to

12   the government, to stop the car and see what happens.

13          They don't approach the car.  They don't go up to the

14   car.  They don't drive the police vehicle up there to stop it.

15   They just let it go.  If they had actually seen that, if they

16   had actually seen what Officer Spina testified to, I think

17   that's what they would have done.  Instead, they are following

18   this car all the way while the car is driving.

19          If you look at the complaint, the first paragraph

20   talks about the deponent, Officer Spina, observed the defendant

21   seated behind the steering wheel.  He talks about the

22   description of the car and that the defendant was observed

23   seated behind the steering wheel of said motor vehicle while

24   said vehicle was in motion at the public location, a public

25   roadway.

1          There was no mention, of course, of anything about a

2    gas station, anything about a license plate, anything about

3    tinted windows, anything about marijuana, anything about an

4    open warrant.  The only thing that is mentioned is at the end,

5    after my client has been arrested, not before he is arrested,

6    there is some mention about the suspended license, which is the

7    only Vehicle and Traffic Law violation cited in the complaint.

8    And that was after he was arrested, not before.

9          I think there is no corroboration for his testimony.

10   The only slight corroboration is that when they vouchered the

11   materials, there was only one license plate.  There is no

12   reference to that at all in the complaint.

13         Of course, all this was the fault of the ADA.  He puts

14   down an 18-year conviction.  The only thing missing from the

15   complaint is the Yankee score from that night.  All the rest of

16   the stuff was trivia, Judge, nothing that would corroborate the

17   testimony of Officer Spina.

18         I think the government has fallen far short of their

19   burden in this case, and I would move to suppress.  Thank you.

20         THE COURT:  Did you want to be heard further, Mr.

21   Krouse?

22         MR. BRILL:  I will rest on our submission, your Honor,

23   and I join in co-counsel's arguments as well.

24         MR. KROUSE:  Briefly, your Honor.  The government

25   submits that the Court should credit the uncontradicted

testimony of Officer Spina.  There are really two questions for
the Court, as the Court knows: whether there is probable cause
to conduct the stop and whether there was probable cause to
search or whether there was another grounds that justified the
search.

As to the first question, whether there was proximate
cause to conduct the search, Officer Spina's uncontradicted
testimony was that he during the vehicle patrol saw a vehicle
that he knew from prior briefings was associated with Terrell
Polk, that he knew Mr. Polk had an open warrant for his arrest
and had a suspended driver's license, and that he noticed the
car had only one license plate and excessively tinted windows.
They waited.  Once the car exited the gas station and started
driving, they pulled over the car.

The government submits the uncontradicted testimony of
Officer Spina establishes that they had either reasonable
suspicion to stop the car or probable cause to stop the car
based only on the tinted windows, the single license plate, and
the fact that they had reason to believe that Mr. Polk was the
person driving that vehicle.

As to the second question, whether there is probable
cause to conduct the search, Officer Spina's testimony, which
is uncontradicted, is when he went to the vehicle, Mr. Polk was
driving and there was a smell of marijuana coming from the
vehicle.  Mr. Polk was placed under arrest for driving with a

1    suspended license and for his outstanding arrest warrant, and a

2    search was conducted.

3            That search was justified either for probable cause to

4    believe that there was contraband in the vehicle, namely, the

5    marijuana, or based on officer safety, because Mr. Corbett and

6    Mr. Smith were still not arrested at that point.  It's

7    justified, under Michigan v. Long, to conduct a security search

8    of the interior of the vehicle, which is what the officer did.

9            Moreover, even if those two grounds weren't

10   sufficient, Officer Spina testified that the standard procedure

11   for the NYPD in a case where a driver like Mr. Polk was

12   arrested for driving with a suspended license or because of his

13   open arrest warrant would be to take the vehicle back to the

14   precinct and conduct an inventory search.  The government

15   submits it would have been inevitable that the inventory search

16   would have discovered the loaded firearm in the backseat.

17           For all those reasons, your Honor, the government

18   submits that the defense motions to suppress should be denied.

19           THE COURT:  Let me address it this way.  First, let me

20   address some issues that weren't the subject of the hearing.

21   Originally, the motion was broader.  There was a motion to

22   suppress the evidence seized pursuant to a search warrant.  I

23   would assume that that motion is either withdrawn or abandoned.

24   In any event, there is no indication that there is any

25   legitimate basis to attack the warrant, as it was issued by the

1    magistrate judge.  Therefore, that search pursuant to a warrant

2    is a legal search.

3           Nothing has been presented either in the papers or

4    testimony or argument that would indicate that that search

5    pursuant to a lawfully issued warrant by the magistrate judge

6    based on probable cause was an invalid warrant.  The warrant

7    authorized the search.

8           Substantively, the officers searched the areas that

9    would be authorized by that warrant and found material that

10   they had the right to seize upon properly searching the

11   apartment and searching the areas that one believed that the

12   materials authorized to be searched for in the warrant might be

13   located.  And any other material, unlawful contraband, that the

14   officers might come across in that search of the areas

15   authorized to be searched would be lawfully seized pursuant to

16   the lawfully issued warrant.

17          Also, the government referenced in their footnote in

18   their papers that Mr. Smith originally moved to suppress the

19   statements that he made at the time of his arrest based on a

20   failure to provide Miranda warnings.  The government has

21   indicated that the government subsequently obtained the

22   videotape of Mr. Smith's interview from the NYPD, which

23   indicates that Mr. Smith waived his Miranda warnings and

24   properly provided a copy of the recording to Smith's attorney.

25   That video clearly indicates that Mr. Smith was provided his

1    Miranda warnings.

2              Mr. Brill, I didn't hear any dispute with regard to

3    that.  I haven't seen the video, but it is my understanding the

4    video was provided to you.

5              MR. BRILL:  Yes.  On the one hand, it was not the

6    subject of the hearing.  But the fact is that I did receive

7    that video.  I will acknowledge and concede that Miranda

8    warnings were provided to Mr. Smith.  So with respect, we will

9    withdraw that portion of the motion.

10              THE COURT:  With regard to the motion, there are

11    several issues that were raised.  I am going to deny the

12    motions of the defendants based on the following findings of

13    act and conclusions of law.

14              At the hearing, Officer Joseph Spina testified.  He is

15    a six-year veteran of the New York City Police Department.  He

16    was part of a citywide anti-crime team.  He testified that he

17    had worked for four years as an officer at the 44th Precinct.

18    On August 26, 2015, he was on patrol in an unmarked vehicle

19    with another officer.

20              They had information that Mr. Polk had been involved

21    in this violent activity and shootings and robberies.  They

22    were also in possession of information that Mr. Polk drove a

23    four-door Chrysler sedan.  They were also given information

24    that Mr. Polk had a suspended license and had an open warrant

25    for his arrest.  And they had seen pictures of Mr. Polk so that

1    they would recognize Mr. Polk.

2         They began their tour at 6:30 p.m.  At approximately

3    11:45 p.m. they saw a vehicle that specifically matched the

4    vision of Mr. Polk's vehicle.  It was parked in a gas station.

5    They observed that it had one rear license plate and had dark

6    tinted windows and was missing the second license plate.

7         Most of the facts I recite that were testified to by

8    the officer at the hearing are not substantially in dispute.

9    There is an argument that the officers did not have the

10   information that Officer Spina testified that he had and it was

11   not credible as to whether or not he observed the rear license

12   plate, observed one license plate and dark tinted windows.

13        I have to point out that that testimony comes in

14   totally uncontradicted.  As a matter of fact, not only is there

15   no testimony at the hearing that contradicts the testimony of

16   the officer on that issue, even the defendants' affidavits do

17   not contradict that testimony.  The argument is that the Court

18   should simply reject that testimony as being incredible even

19   though there is no sworn testimony or affidavit from any

20   defendant that claims that the car had two license plates or

21   that the car didn't have dark tinted windows.

22        The affidavit doesn't necessarily reference one way or

23   the other the tinted windows, but Mr. Smith's affidavit does

24   indicate that the windows were closed and that when the car was

25   stopped, not inconsistent with Officer Spina, they were told to

1     roll down the windows after the car was stopped.

2          The car pulled out of the gas station, the officers

3     believing that it was Polk.  It is fair and clear that they

4     were more concerned about the possibility that they could

5     locate Polk and that this was Polk than they were with regard

6     to the traffic violations.  However, those traffic violations

7     did exist, and there is no witness who contradicts him or gives

8     any other scenario other than that there was a missing license

9     plate and dark tinted windows.

10          The officers, observing that, had a lawful, legal

11     reason to stop the vehicle.  As I say, there is a difference

12     between a pretext and an officer's looking for a lawful

13     opportunity stop a vehicle.

14          In this case, even though it is clear to me that their

15     main concern was whether or not Mr. Polk, who they were aware

16     was suspected in shootings and robberies and had an open

17     warrant and also a suspended license, being given the

18     opportunity to stop the car for the traffic infraction could in

19     their mind give them the opportunity to see if they found Mr.

20     Polk.  That turned out to be the case.

21          Officer Spina approached the driver's side.  His

22     partner approached the passenger side.  Officer Spina testified

23     that the most significant, if not the only genuine dispute in

24     this case is whether or not there was a smell of marijuana

25     emanating from the automobile.  That is only put at issue

because of the affidavits.  There was no testimony at the
hearing that contradicted the officer that when he got to the
passenger side, he smelled marijuana when the window was
opened.

He recognized Mr. Polk and he saw that there were two
other passengers, one in the front seat and one in the backseat
with Mr. Polk.  The officer asked Polk for his license and
registration.  He already had information that his license was
suspended and that Mr. Polk was probably driving without a
valid license and would not be able to produce such a license.
In fact, Mr. Polk was not able to produce a valid driver's
license.  He arrested Mr. Polk, asked him to step out of the
car and arrested Mr. Polk for driving that vehicle without a
valid license.

The two other individuals in the car were also asked,
Corbett and Smith, to step out of the car.  A quick search was
done of the cabin area of the car.  In the backseat armrest the
officers saw a loaded weapon with ammunition.  Upon seeing the
gun in the car, they arrested all three of the individuals who
had been asked to step out of the car, arrested the other two
along with Mr. Polk, who was already under arrest.

The car was seized and taken to the precinct, and a
further inventory search was done at the precinct.  Also, when
Mr. Smith was searched, a quantity of marijuana was recovered
from Mr. Smith.  The firearm, rounds of ammunition, and the

1   marijuana were vouchered as evidence against the defendant.

2           Regarding that scenario, I find that the testimony

3   that the officer gave was not only reasonable but in substance

4   it was not even contradicted.  There is no testimony that

5   contradicts any of his testimony.  The only thing that is

6   inconsistent with any of his testimony is that the officer said

7   that he smelled marijuana emanating from the car and Mr.

8   Smith's affidavit says that there was no smell of marijuana.

9           I find that Officer Spina's testimony on all the

10  issues to be credible.  There is no reason to find, based on

11  Officer Spina's testimony alone, uncontradicted, that any of

12  the facts he testified to, which were not disputed, are somehow

13  untrue and should be rejected.

14          The smell of marijuana, which is only contradicted by

15  the affidavit, does not give rise to rejecting Officer Spina's

16  testimony on that issue.  Besides, that even if I were to not

17  credit the smell of marijuana, the overall circumstances that

18  were faced by Officer Spina provided a legal, lawful basis for

19  Officer Spina and his partner to stop the vehicle, to arrest

20  Mr. Polk, to further search the area of the car, and, upon

21  finding the gun in the car, to arrest all of the occupants in

22  the car.

23          First of all, there was more than reasonable

24  suspicion, there was probable cause to believe that they

25  observed a traffic infraction.  Not only was there probable

cause that they observed a traffic infraction by seeing a car

with dark tinted windows, which would constitute an infraction,

and only having one license plate, not only did that provide

probable cause for them to stop and charge the driver, they had

more information and reasonable suspicion along with that to

believe that Mr. Polk was in this car.  They had information

that Mr. Polk had an open warrant and had a suspended license

and had been involved in violent activity, had been in

possession of weapons and had been involved in shootings and

robberies.

          So, upon seeing the missing license plate and the dark

tinted windows, they had the right to stop that automobile to

either issue a ticket or to arrest the driver, particularly as

the driver turned out to be who they thought it was, Mr. Polk,

who had an outstanding warrant and a suspended license.  So

they had a lawful basis, a legitimate basis, to stop this

vehicle.

          Upon stopping this vehicle, they recognized Mr. Polk.

He was driver of the car.  They knew he had a suspended

license.  He could not produce a lawful, valid license.  There

was also a warrant for his arrest, which in and of itself

provides probable cause for the officers to arrest him at that

time, knowing that he had an open warrant for his arrest.

          With the traffic infraction, his suspended license,

and the fact that there was an open warrant for his arrest,

13

1    once they recognized Mr. Polk, they had a lawful reason and

2    basis to place him under arrest at that time.  Having had

3    reason to stop the car and having had probable cause to arrest

4    Mr. Polk, Mr. Polk was taken out of the car and he was

5    arrested.

6          The question then is whether or not there was a basis

7    for searching the car further.  Although Mr. Polk was now under

8    arrest, there were two other individuals in this car who were

9    asked to step out of the car.  I find credible his testimony

10   that he smelled marijuana.  That in and of itself would give

11   him a reasonable basis to further search the areas of the car.

12         Even beyond the smell of marijuana, the officers

13   reasonably under these circumstances had a right for their own

14   safety, given the violent nature of Mr. Polk's reputation and

15   given the fact that there were two officers and three

16   individuals, even though all of the individuals were outside of

17   the car at this point, it was reasonable for the officers to do

18   a quick search of the interior of the car for their own safety

19   in order to ensure that one of these individuals did not get

20   back into this car and retrieve this weapon and use this weapon

21   against them, particularly knowing the additional information

22   that they had that there was a good chance that Mr. Polk might

23   be trafficking arms, since he was already known to be involved

24   in violent activity and known to be involved in shooting and

25   robbery.

1          Although the other two at that point were not under

2     arrest, it was appropriate for the officer to search the

3     passenger area of the car for marijuana because they smelled

4     marijuana.  But even if that were not the case, given this

5     automobile stop and the circumstances and the individual that

6     they were placing under arrest, and not knowing anything about

7     his two other associates in the automobile, it was reasonable

8     for the officers, before they took any further action with

9     regard to the other two individuals, to do a quick search of

10    the car for their own safety.

11         That search of the cabin area of the car quickly

12    located a loaded firearm in the armrest of the car.  At that

13    point, once the firearm was located pursuant to that lawful

14    search, located in the passenger area of the car, all three

15    individuals were placed under arrest who were in that car for

16    jointly possessing that weapon.  They were arrested and all

17    three transported back to the precinct.

18         Alternatively, the government argues, also legally

19    appropriately, that given the fact that Mr. Polk was the driver

20    of the car, that he was being arrested, that he did not have a

21    valid driver's license, that the car would have been I am

22    pounded, taken back to the precinct, and an inventory would

23    have been done at the precinct.

24         An inventory search was in fact done at the precinct.

25    Clearly, an appropriate lawful inventory search, if it had been

1    conducted back at the precinct with or without the initial

2    search, discovery of the weapon in the car would have been

3    inevitable pursuant to the inventory search.  Therefore, they

4    would have had a lawful basis to search the automobile once

5    they arrested the driver of the automobile for the traffic

6    infraction and for driving without a license.

7         There was a further basis to arrest Mr. Smith after

8    the officer who testified he smelled the marijuana in fact

9    recovered marijuana from the person of Mr. Smith in the

10   vehicle.  Based on the testimony at the hearing, which came in

11   substantially uncontradicted and was credible in all respects,

12   the officers had both a reasonable suspicion and probable cause

13   to stop this vehicle.

14        Once the vehicle was stopped and they recognized Mr.

15   Polk, who was driving the car on a suspended license and they

16   had an open warrant for his arrest, they had the right to

17   arrest him.  The only appropriate course of conduct would have

18   been to arrest Mr. Polk, which they immediately did.

19        Having smelled marijuana and having three individuals

20   there at the car, Mr. Polk and two other individuals, it was

21   appropriate both to search the car further for at least

22   marijuana and to search the car for a possible weapon that one

23   of these individuals might get access to, for their own safety.

24        Beyond that, since they were arresting Mr. Polk, who

25   was the driver and possessed the car, upon that arrest they

 1    would have seized the automobile, which they did, and they

 2    would have taken it back to the precinct, which they did, and

 3    would have conducted and inventory search, which was done at

 4    the precinct.  Even if they had not found the gun before they

 5    arrested Mr. Polk, they would have clearly found that gun in

 6    the inventory search.  So there would be no basis to suppress

 7    that gun as evidence lawfully found and seized at the time of

 8    their arrest.

 9           Based on those findings of fact and conclusions of

10    law, I am going to deny Mr. Polk's and Mr. Smith's motions in

11    their entirety, finding that the stop of the car, the search of

12    the car, and the retrieval of the evidence to be offered

13    against the defendants at a trial was lawful and there is no

14    legal basis to suppress any of the evidence retrieved as a

15    result of the stop, search, and arrest of the defendants.

16           At this point, how does the government wish to

17    proceed?

18           MR. KROUSE:  Your Honor, the government will put on

19    the record that we have extended plea offers to three of the

20    four defendants: Mr. Corbett, Mr. Moss, and Mr. Smith.  The

21    trial date is currently set for September 24th, I believe.

22           The government would renew its request for an earlier

23    trial date if it pleases the Court.  If the Court's

24    availability is amenable to that and if the defense counsel who

25    previously said that they would potentially be able to move the

1   trial to an earlier date are able to do so, the government

2   would wish to proceed to trial in either August or early

3   September.

4           THE COURT:  What is the defense's position?

5           MR. De CASTRO:  Judge, as I mentioned at a prior

6   conference, I have a September 10th trial already scheduled in

7   the Eastern District before Judge Brody.  But before that, I

8   have an August 27th scheduled trial before Judge Failla.  With

9   all candor, I would like those cases to be resolved, but they

10  have not been.  The August 27th looks like it's happening, and

11  September 10th I'm still not sure of.

12          THE COURT:  At this point it is your intent and your

13  client's intent to go to trial on that date?

14          MR. De CASTRO:  At this point we have not accepted the

15  government's offers, but we are discussing it.  I plan on

16  giving the government an answer in the next couple of weeks.

17  You will know very soon whether we are still part of the

18  calculus.

19          THE COURT:  What is the likelihood that others are

20  going to be at this trial and the availability?

21          MR. LIND:  Judge, speaking for Mr. Polk, I would like

22  to move it forward a week, to the 17th of September.  Judge

23  Gardephe set a date for October 1st in another case.  I told

24  him I'm on trial before your Honor.  It is a multidefendant

25  case.  Maybe something will happen.  I don't think anything is

 1   going to happen in that case.  Right now, considering what the

 2   government offered my client, I'm pretty certain we are going

 3   to trial.  So I would like to move it forward to September 17th

 4   because of the October 1st trial date.

 5          MR. KROUSE:  What about September 4th, your Honor, the

 6   day after Labor Day?  To be clear, for the record, the

 7   government hasn't made any offer to Mr. Polk.

 8          MR. LIND:  We'll talk about it.

 9          THE COURT:  That doesn't tell me whether or not he is

10   going to plead guilty or go to trial on the charge.  I have a

11   trial already scheduled for September 4th.  Ms. Vargas, what is

12   your situation?

13          MS. VARGAS:  Your Honor, on behalf of Mr. Moss, we

14   have been extended an offer by the government, which I have

15   discussed extensively with Mr. Moss.  He is not inclined to

16   accept the offer.  I have discussed it on many occasions with

17   him.  So we will, I believe, be going to trial.  September 4th

18   not a good date for me, but your Honor says he is on trial

19   anyway.

20          THE COURT:  Mr. Brill.

21          MR. BRILL:  Mr. Smith, there has been an offer

22   extended to him.  He is in possession of it.  I plan to speak

23   further to Mr. Smith about that.  At this point he has not

24   accepted it.  As it stands today, I'll be part of that trial as

25   well.

1           THE COURT:  Your availability is?

2           MR. BRILL:  Mr. Lind suggests the 17th.  That's fine

3  with me.

4           THE COURT:  Let me see what else I have on my calendar

5  for those two weeks.  At this point the government has

6  approximately how many witnesses and it will take approximately

7  how long to present?

8           MR. KROUSE:  Your Honor, it depends a bit on who goes

9  to trial.  I wouldn't anticipate the trial lasting more than

10  two weeks.  I know your Honor is on trial for September 4th and

11  I'm not sure how long that trial will last, but September 11th

12  is another potential date.  Rosh Hashanah is September 10th.

13          THE COURT:  Rosh Hashanah is the 10th and Yom Kippur

14  is the 18th.

15          MR. KROUSE:  Yes, your Honor.  If we started on the

16  11th and didn't sit on Yom Kippur, that would be preferable

17  both for Mr. Lind's schedule and the government's schedule,

18  since Mr. Lind stated he has an October 1st trial and this

19  trial would probably last about two weeks.

20          THE COURT:  I know we had originally had a couple of

21  days earlier and tried to avoid the holiday, and I pushed it

22  back to the 24th.  With the holidays and my trial schedule, it

23  is awkward to find a solid two weeks in September.

24          Who is definitely going to be out on the holiday?

25          MR. BRILL:  Yom Kippur is a definite for me, the day.

1    I'm not sure what day that is.

2              THE COURT:  I think that's the 19th.

3              MR. BRILL:  Any other day is open.

4              THE COURT:  Rosh Hashanah is not a problem?

5              MR. BRILL:  That's right.

6              THE COURT:  For anyone else?  It may be a problem for

7    jurors if we pick a jury.

8              Mr. Krouse, can you give me a little better idea about

9    how many witnesses you might call and what is the quickest you

10   think you can do this?

11             MR. KROUSE:  Your Honor, depending on stipulations,

12   the government would anticipate somewhere in the vicinity of 15

13   to 20 witnesses.  Many of them would be relatively short.

14   There will probably be two to three cooperating witnesses who

15   would be testifying, with one main cooperating witness, who

16   would be probably the longest.  I can anticipate, depending on

17   how many defendants go to trial, that the case could come in in

18   a week as well.  I'm saying two weeks just to be safe.

19             THE COURT:  This isn't ideal, but I'm leaning toward

20   starting the 10th and not sitting the 19th if we are still on

21   trial by the 19th.

22             MR. De CASTRO:  Judge, that is assuming that my client

23   is out and I'm not on trial in the Eastern District.  My trial

24   in the Eastern District starts on the September 10th.

25             THE COURT:  And ends when?

```
 1              MR. De CASTRO:  I would anticipate it would be one
 2    week.  Your Honor, I am the second or perhaps the third lawyer
 3    on that case, and that client has asked that I be removed just
 4    recently.  I'm going to see Judge Brody this week to see if I'm
 5    going to still remain on the case and if we are trying it.  I
 6    will know at the end of this week.  If I'm off the case, then I
 7    will be free that day and it's not a problem.
 8              THE COURT:  That's assuming that your client and our
 9    others go to trial.
10              MR. De CASTRO:  That's correct.
11              THE COURT:  Let's say for now the 10th.  If we have to
12    push it back a week or push it back to where we were before,
13    we'll do that.
14              I would like to have one other conference next month.
15    If there are going to be dispositions, whatever dispositions
16    are going to be done, I would like to see them done in the next
17    30 days.  When we meet on the next date, I'm going to assume
18    whoever is here on that date is going to trial.  If you work
19    out any dispositions, contact my chambers right away, and we'll
20    bring those individuals in and dispose of those cases before
21    the next conference date.  Whoever is left on that date, that's
22    who I'm assuming is going to trial.
23              If you are out of the other case by then -- when will
24    you know that?
25              MR. De CASTRO:  I should know this week or early next
```

1   week.  Judge Brody just scheduled the hearing.  I can let the

2   Court know right when I know about that.  I think in the next

3   two weeks I will know regarding a plea in this case.

4              THE COURT:  I am going to schedule it now for

5   September 10th.  I am going to schedule a final pretrial

6   conference for August 16th at 10 o'clock.  If there are

7   dispositions to propose that the parties work out, let me know

8   before that time so I can bring those parties in to do the

9   dispositions between now and the 16th.

10             As I say, whoever is here on the 16th, I'm going to

11  assume that's who's going to trial, and we will see whether or

12  not the 10th is still a viable date or we have to make some

13  other adjustment.

14             I will commit to not sitting on the 19th.  As long as

15  I do that for the jurors who are chosen, then we shouldn't have

16  a problem.  Anybody who is going to be celebrating the holiday

17  before that, Rosh Hashanah, is not going to be here anyway,

18  they are not going to be in court.  So we can pick a jury on

19  the 10th, start the case on the 10th.  We'll see whether or not

20  we get the case in before Yom Kippur.  If not, we'll skip that

21  day and then continue the next day.

22             Let's try to firm up whether there are going to be any

23  dispositions, who is going to here on the 16th at 10 o'clock.

24  At that point in time, if everyone is still available for that

25  day, it will be September 10th for trial.  Otherwise, we'll see

1   to what extent we have to move it sometime within 30 days --

2   the next week, the week after, or the first week of October, if

3   we can -- to try the case.

4           Is there anything further by the government today?

5           MR. KROUSE:  No, your Honor.  Thank you.

6           THE COURT:  Anything further from the defense?

7           MS. VARGAS:  No, your Honor.

8           MR. De CASTRO:  No, your Honor.

9           MR. BRILL:  No, your Honor.

10          MR. LIND:  No, your Honor.

11          THE COURT:  I will see you on August 16th or before

12   then if you have a disposition to propose.  Thank you.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25